498 So.2d 424 (1986)
John W. TAYLOR, et al., Appellants,
v.
LEE COUNTY, Florida, Appellee.
No. 69174.
Supreme Court of Florida.
December 4, 1986.
Steven Carta of Simpson, Henderson, Savage & Carta, Fort Myers, for appellants.
James G. Yeager, Lee County Atty., Fort Myers, and Robert L. Nabors and Gregory T. Stewart of Nabors, Giblin, Steffens & Nickerson, P.A., Tallahassee, for appellee.
*425 McDONALD, Chief Justice.
Taylor and several other Lee County taxpayers appeal a circuit court order validating the county's proposed issuance of transportation facility revenue bonds. We have jurisdiction pursuant to article V, section 3(b)(2) of the state constitution and affirm the circuit court's order.
The ordinance and resolution adopted by Lee County provide for the issuance of not more than $100,000,000 of transportation facility revenue bonds. The ordinance authorizes the county to impose tolls on bridges, causeways, and expressways within the county, with the toll revenue to be used to repay the bonds and to maintain, repair, and operate the transportation facilities. The circuit court, finding the bonds to be for proper, legal, and valid purposes and to be fully authorized by law, validated this bond issuance.
On appeal Taylor claims that the county lacks the power and authority to impose a toll on an existing toll-free bridge to pay for a new bridge and that the county lacks the power and authority to issue these bonds solely under chapter 125, Florida Statutes (1985). The county, on the other hand, argues that the first issue is collateral to the bond validation and, therefore, not cognizable in these proceedings and that, because Lee is a home rule county, chapter 125 gives it the power and authority to issue these bonds. We agree with the county.
Taylor argues that it is the sole prerogative of the state to impose and regulate tolls and that tolls cannot be imposed without express authority of the state. The cited authority for this claim is Day v. City of St. Augustine, 104 Fla. 261, 139 So. 880 (1932), in which this Court held that the state legislature has almost absolute power with respect to toll bridges and may vest that power in other appropriate entities. Years after Day the legislature amended chapter 125 to enlarge the powers of counties to govern themselves through home rule. Ch. 71-14, Laws of Fla. See Speer v. Olson, 367 So.2d 207 (Fla. 1978). Thus, subsection 125.01(1)(m) now provides in part that counties may "[p]rovide and regulate arterial, toll, and other roads, bridges, tunnels, and related facilities." Subsection 125.01(3)(a) incorporates "all implied powers necessary or incident to carrying out such" enumerated powers. The county, therefore, may set tolls because that power is inherent in the power to provide toll roads. Moreover, toll roads and bridges are "projects" within the meaning of subsection 125.011(2) for which, under sub-section 125.012(9), the county may "fix, regulate, and collect rates and charges" for services and facilities.
As the county points out, collateral issues will not be resolved in bond validation proceedings. Zedeck v. Indian Trace Community Development District, 428 So.2d 647 (Fla. 1983). Although the generation of revenue to fund this bond issue depends on the county's authority to impose tolls, placing a toll on an existing toll-free bridge is collateral to this bond validation. Taylor's first claim, therefore, is outside the scope of this case.
The scope of judicial inquiry in bond validation proceedings is limited. Specifically, courts should: 1) determine if a public body has the authority to issue the subject bonds; 2) determine if the purpose of the obligation is legal; and 3) ensure that the authorization of the obligations complies with the requirements of law. Wohl v. State, 480 So.2d 639 (Fla. 1985). The circuit court found that this bond issue met these requirements, and we see no reason to disturb that court's conclusions.
Taylor argues that the instant bonds are specifically authorized by chapter 159, Florida Statutes (1985). According to him, therefore, chapter 159 must be used because chapter 125, by itself, is insufficient authority for the issuance of these revenue bonds. Again, we disagree.
The county elected not to use chapter 159 and chose to proceed solely under chapter 125. As a home rule county, Lee has such powers of self-government as are provided by general and special law. Art. VIII, *426 § 1(f), Fla. Const. Under general law, as stated previously, the county has the power to provide and regulate toll roads and bridges. § 125.01(1)(m). It may issue bonds. § 125.01(1)(r). Bonds that it issues may be revenue bonds. §§ 125.013, 125.012(21). We hold that these provisions of general law, i.e., chapter 125, give the county ample power and authority to issue the instant bonds.[*] Additionally, section 159.14 states that sections 159.01 through 159.19 "shall be regarded as supplemental and additional to powers conferred by other laws." Chapter 159, therefore, provides an alternate method of issuing bonds, use of which is optional, not mandatory. Because the county could proceed under chapter 125, it did not have to use chapter 159.
We therefore affirm the circuit court order validating the instant bond issuance.
It is so ordered.
ADKINS, BOYD, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
NOTES
[*] This Court considered the power of home rule counties to issue bonds under ch. 125 in Speer v. Olson, 367 So.2d 207 (Fla. 1978) (sewer and water systems), and State v. Orange County, 281 So.2d 310 (Fla. 1973) (revenue bonds for construction of county buildings to be paid off from racetrack and jai alai funds). Contrary to Taylor's contentions, both Speer and Orange County support our holding that ch. 125 gives Lee County the power and authority to issue the instant bonds.