508 So.2d 1307 (1987)
Richard O. POWELL and Freddie D. Roulhac, Appellants,
v.
STATE of Florida, Appellee.
No. BP-340.
District Court of Appeal of Florida, First District.
June 17, 1987.
*1308 Philip J. Padavano, Tallahassee, for appellants.
Robert A. Butterworth, Atty. Gen., and John W. Tiedemann, and Elizabeth Masters, Asst. Attys. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Defendants below, Richard O. Powell and Freddie D. Roulhac, appeal their convictions of malpractice by a jailer in violation of section 950.09, Florida Statutes (1985). They contend that this statute is impermissibly vague and overbroad and therefore violative of the due process clause of the fourteenth amendment to the United States Constitution. Finding no merit to this argument, we affirm.
Appellants are correctional officers at the Jackson County Jail. On March 6, 1986, separate two-count informations were filed against each appellant charging him with aggravated battery under section 784.045, a felony, and malpractice by a jailer under section 950.09, a misdemeanor.[1] The *1309 charges arose out of a November 1985 disturbance in the cell block in which inmate Carson Evans was housed. Appellants believed Evans was responsible for the disturbance, so they took him out of his cell and restrained him with his hands handcuffed behind his back and his feet shackled. The officers then drew Evans' arms upward with a chain secured to the bars of a cell, and he remained in that position for thirty to forty-five minutes. A similar incident involving Lambert Gavin, a juvenile inmate of the jail, gave rise to informations charging appellants with aggravated child abuse and malpractice by a jailer. Appellants unsuccessfully moved to dismiss the informations in both cases, contending that section 950.09 is unconstitutional because the statute is so vague and indefinite that it fails to convey a sufficient warning as to the type conduct prohibited.
A jury trial was held in the Evans case. Appellants testified that Evans' body was not elevated by the chain and that his feet were flat on the floor at all times. Evans testified, however, that his arms were hoisted behind his back so that only his toes were touching the ground. He testified that after about fifteen minutes his wrist started hurting, "feeling like it was in shock or something" (R 142). He also said his back and his ankle were hurting, and he asked Roulhac to let him down. Roulhac told him he'd have to "stay up a little bit more longer" and didn't release Evans until approximately thirty minutes had elapsed. Since this is an appeal from a finding of guilty, we must accept as true the version of the facts given by Evans.
The judge instructed the jury on the offense proscribed by section 950.09 and stated in part that "[d]uress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose or threats of bodily or other harm, and then inhumanity and oppression are defined as an extreme or aggravated cruelty."[2] (T 201.) The jury found each of the appellants not guilty of aggravated battery but guilty of the misdemeanor offense of malpractice by a jailer. In the Gavin case, pursuant to agreement, the state dismissed the felony charge of aggravated child abuse and appellants plead nolo contendere to the charge of malpractice by a jailer, reserving the right to appeal the denial of the motion to dismiss on constitutional grounds. In each case the trial court entered an order withholding adjudication of guilt as to each appellant, placing each appellant on probation for a total of six months, and ordering each appellant to pay a fine of five hundred dollars.
Appellants contend that section 950.09 does not set forth the elements of the crime of "malpractice by a jailer" and does not contain any standards for determining what conduct amounts to malpractice. That section, they argue, is too vague and therefore violative of the fourteenth amendment because the phrase "willful inhumanity and oppression" is so subjective that it cannot be said to sufficiently inform the public of the type of conduct prohibited. Appellants argue that the statute does not define a criminal offense but, rather, authorizes the state attorney to decide what will constitute a criminal offense, and, thus, unconstitutionally allows the potential for arbitrary application of the statute.
The function of the void-forvagueness doctrine is to assure that people are given fair notice of what conduct is prohibited by a specific criminal statute and to curb the discretion afforded to law enforcement officers and administrative officials in initiating criminal prosecutions. A statute will be held void for vagueness if the conduct forbidden by it is so unclearly defined that persons "of common intelligence *1310 must necessarily guess at its meaning and differ as to its application." Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). However, "[t]o make a statute sufficiently certain to comply with constitutional requirements, it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited." State v. Holden, 299 So.2d 8, 9 (Fla. 1974). It is only necessary that the language of the statute convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. State v. Reese, 222 So.2d 732, 736 (Fla. 1969).
In deciding whether section 950.09 is unconstitutionally vague, we necessarily focus upon the phrase "willful inhumanity and oppression" to determine whether the words "inhumanity" and "oppression" convey sufficient warning of ascertainable proscribed conduct when measured by common understanding and practices. A cardinal rule of statutory construction requires that, unless otherwise defined or limited by manifest legislative intent, statutory language is to be given its plain and ordinary meaning. Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984). Although the critical words are not statutorily defined, they can be readily understood by reference to commonly accepted dictionary definitions. See Gardner v. Johnson, 451 So.2d 477 (Fla. 1984); Miller, The Medium is the Message: Standards of Review in Criminal Constitutional Cases in Florida, 11 Nova Law Review 97, 124 (1986) (standard dictionary definitions are reliable sources for plain and ordinary language definitions).
"Inhumanity" is defined in Webster's Third New International Dictionary, Unabridged (1981) as "the quality or state of being cruel or barbarous; cruelty."[3]
"Oppression" is defined in Webster's unabridged dictionary as "unjust or cruel exercise of authority or power by the imposition of burdens; especially, the unlawful, excessive, or corrupt exercise of power other than by extortion by any public officer so as to harm anyone in his rights, person or property while purporting to act under color of governmental authority."[4] Oppression has been defined in a civil action as "subjecting a person to cruel and unjust hardship in conscious disregard of his rights." Bechtel Corp. v. Industrial Indemnity Co., 86 Cal. App.3d 45, 49, 150 Cal. Rptr. 29 (1979).
In view of these commonly accepted definitions, we do not have any difficulty determining that the willful use of excessive force by a jailor acting under color of his office, which force is not necessary to restrain the prisoner in order to keep him in safe custody, but, rather, is inflicted to cause pain and suffering as punishment, constitutes an act of cruelty amounting to "willful inhumanity and oppression" within the meaning of the statute. The definitions of these words are not difficult to apply, nor are they subject to unbridled discretion in their application by officials undertaking to enforce the statute. A person of common intelligence would readily understand that to place a prisoner on the rack to cause him pain, or to hang a prisoner by his thumbs from the yardarm to cause him pain, or to flog a prisoner's back *1311 with the lash to cause him pain, would all constitute acts of cruelty that amount to willful inhumanity and oppression. Similarly, persons of common intelligence would not necessarily have to guess that hanging a prisoner up by his hands, with his arms twisted behind his back and his feet not resting firmly on the floor, so as to cause physical pain and suffering, amounts to "extreme or aggravated cruelty," as the jury was instructed by the court, and thus constitutes "willful inhumanity and oppression" prohibited by the statute.
We have considered the cases cited by appellants and find them inapplicable because none of the cited cases construe the statutory language at issue in this case. Finding no infirmity in the language of the statute, the appealed convictions are AFFIRMED.
THOMPSON and BARFIELD, JJ., concur.
NOTES
[1] Section 950.09, first enacted in 1832, defines malpractice by a jailer as follows:

If any jailer shall, by too great duress of imprisonment or otherwise, make or induce a prisoner to disclose and give evidence against some other person, or be guilty of willful inhumanity and oppression to any prisoner under his care and custody, he shall be guilty of a misdemeanor of the second degree punishable as provided in § 775.082 or § 775.083.
The factual context underlying the charge in this case implicates only the emphasized portion of the statute; therefore, we limit our consideration to the constitutional validity of the offense so defined. We do not consider the constitutionality of the remaining portion, which relates to making or inducing a prisoner to disclose or give evidence against another person.
[2] The instructions have not been challenged on this appeal.
[3] Other widely recognized dictionaries contain similar definitions: (1) lack of pity or compassion; an inhuman or cruel act. The American Heritage Dictionary, 1979; (2) extreme or aggravated cruelty. Black's Law Dictionary, Fifth Edition, 1979; and (3) want of human feeling and compassion; brutality, barbarous cruelty. Oxford English Dictionary, Compact Edition, 1971.
[4] Other dictionary definitions are similar: (1) persecution by unjust or tyrannical use of force or authority. The American Heritage Dictionary, 1979; (2) the misdemeanor committed by a public officer, who under color of his office, wrongfully inflicts upon any person any bodily harm, imprisonment, or other injury. An act of cruelty, severity, unlawful exaction, or excessive use of authority. An act of subjecting to cruel and unjust hardship; an act of domination. Black's Law Dictionary, Fifth Edition, 1979; and (3) exercise of authority or power in a burdensome, harsh or wrongful manner; unjust or cruel treatment. Oxford English Dictionary, Compact Edition, 1971.