In re William Bertrand BLACKBURN.

STATE OF FLORIDA DEPARTMENT OF INSURANCE, AS RECEIVER OF GUARANTEE SECURITY LIFE INSURANCE COMPANY, Plaintiff,

v.

William Bertrand BLACKBURN, Defendant.

STATE OF FLORIDA DEPARTMENT OF INSURANCE, AS RECEIVER OF ATLANTIC GENERAL LIFE INSURANCE COMPANY, Plaintiff,

v.

William Bertrand BLACKBURN, Defendant.

Bankruptcy No. 96–08017–8C7.
Adversary Nos. 96–730, 96–731.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 20, 1997.

Stephen D. Busey, John F. MacLennan, Cynthia C. Jackson, Jacksonville, FL, for plaintiff.

Edward M. Waller, W. Donald Cox, Florence E. Harmon, Tampa, FL, for defendant.

Richard C. Prosser, Tampa, FL, for Debtor.

John K. Olson, Tampa, FL, for Trustee Larry Hyman.

### PARTIAL DECISION ON DEBTOR/DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

These consolidated adversary proceedings came on for hearing on March 3, 1997,[1] of the debtor/defendant's motion for summary judgment. The motion contains numerous points and issues. At the conclusion of the hearing, the court was able to resolve a number of those points and issues in a partial decision stated orally and recorded in open court. The court identified three remaining issues, however, that it could decide only after further study. This written partial decision determines those three remaining issues. The court's oral partial decision and this written partial decision together constitute the decision upon which the court can determine the debtor/defendant's motion for summary judgment and upon which the court can enter a final order.

### Plaintiff's Complaint in Adversary Proceeding No. 96–730

In Adversary Proceeding No. 96–730, the plaintiff is the Florida Department of Insurance as receiver of Guarantee Security Life Insurance Company. In the complaint, the plaintiff alleges that the defendant was an officer and director of Guarantee Security Life Insurance Company ("GSL") at specifically alleged key points in time. The plaintiff's claims are:

Count I of the complaint is a claim under Florida law for money damages for defendant's alleged breach of his fiduciary duties as an officer and director of GSL and for a determination that this debt is excepted from discharge pursuant to the provisions of Section 523(a)(4) and Section 523(a)(6) of the Bankruptcy Code.

Count II of the complaint is a claim under Florida law for money damages for defendant's alleged usurpation while an officer and director of GSL of GSL's corporate opportunities and for a determination that this debt is excepted from discharge pursuant to the provisions of Section 523(a)(4) and Section 523(a)(6) of the Bankruptcy Code.

Count III of the complaint is a claim under Florida law for money damages on account of transfers from GSL, made or caused to be made by defendant as an officer and director of GSL, to defendant who is alleged to be an "affiliate" of GSL, or on his behalf, and for a determination that this debt is excepted from discharge pursuant to the provisions of Section 523(a)(4) and Section 523(a)(6) of the Bankruptcy Code.

### Plaintiff's Complaint in Adversary Proceeding No. 96–731

In Adversary Proceeding No. 96–731, the plaintiff is the Florida Department of Insurance as receiver of Atlantic General Life Insurance Company. In the complaint, the plaintiff alleges that the defendant was an officer and director of Atlantic General Life Insurance Company ("AGL") at specifically alleged key points in time. The plaintiff's claims are:

Count I of the complaint is a claim under Florida law for money damages for defendant's alleged breach of his fiduciary duties as an officer and director of AGL and for a determination that this debt is excepted from discharge pursuant to the provisions of Section 523(a)(4) and Section 523(a)(6) of the Bankruptcy Code.

Count II of the complaint is a claim under Florida law for money damages on account of transfers from AGL, made or caused to be

1. The court also conducted an informal, supplemental hearing by telephone on May 12, 1997.

made by defendant as an officer and director of AGL, to defendant who is alleged to be an "affiliate" of AGL, or on his behalf, and for a determination that this debt is excepted from discharge pursuant to the provisions of Section 523(a)(4) and Section 523(a)(6) of the Bankruptcy Code.

## Issues

As previously indicated, there are three remaining issues to be resolved in connection with the defendant's motion for summary judgment:

## A.

### Can a natural person be an "affiliate" within the meaning of Section 631.399, Florida Statutes?

■ In Count III of the GSL complaint and in Count II of the AGL complaint, the plaintiff seeks to recover from the defendant certain transfers made by the respective insurance companies to defendant or for his benefit. The plaintiff's theory of recovery in these counts is found in Florida's Insurers Rehabilitation and Liquidation Act, Chapter 631, Florida Statutes. In particular, with some stated limitations and conditions not relevant here, this statute permits the receiver of an insurer in liquidation, such as the plaintiff, to recover "from any *affiliate* [of the insurer], the amount or value of distributions ... made at any time during the 5 years preceding the petition for liquidation." § 631.399(1), Fla.Stat. (emphasis added). The plaintiff contends in these counts that the defendant is an "affiliate" of GSL and AGL for purposes of recovering particularly alleged distributions. The defendant contends, on the other hand, that he is not an "affiliate" because an individual or a natural person is not an "affiliate" of an insurer within the meaning of the statute. According to the defendant, only a non-natural person may be an "affiliate."

Section 631.011(1), Florida Statutes, defines the term "affiliate" for purposes of the Insurers Rehabilitation and Liquidation Act. This statutory definition provides that the term " '[a]ffiliate' means *any entity* which exercises control over or is controlled by the insurer, directly or indirectly through...." § 631.011(1), Fla.Stat. (emphasis added). The defendant traces the changes to the statute and points out that over time the Legislature amended Section 631.399 to replace the term "person" with the term "affiliate" as the object of the receiver's statutory recovery powers. The defendant also points out that the statutory definition of the term "affiliate" does not include "persons." The defendant interprets this statutory evolution to demonstrate a legislative intent to exclude natural persons from the universe of those that can be "affiliates" within the meaning of the receiver's recovery statute.

■ The starting point for Florida statutory construction purposes is the plain meaning of the words themselves. *See, e.g., National Federation of Retired Persons v. Department of Insurance,* 553 So.2d 1289, 1290 (Fla. 1st DCA 1989); *Powell v. State,* 508 So.2d 1307, 1310 (Fla. 1st DCA), *rev. denied,* 518 So.2d 1277 (Fla.1987). For these purposes, of course, the key words in the statutory definition of "affiliate" are the words "any entity." According to dictionaries, the word "entity" refers to the fact of being and existence. *Webster's Ninth New Collegiate Dictionary* (Merriam–Webster Inc.1988) provides the following definition:

> 1 a: BEING, EXISTENCE; *esp:* independent, separate, or self-contained existence b: the existence of a thing as contrasted with its attributes 2: something that has separate and distinct existence and objective or conceptual reality

*The American Heritage Dictionary of the English Language, Third Edition* (Houghton Mifflin Co.1992) provides this definition:

> 1. Something that exists as a particular and discrete unit: *Persons and corporations are equivalent entities under the law.*
>
> 2. The fact of existence; being.
>
> 3. The existence of something considered apart from its properties.

(Emphasis in original).

*Webster's Collegiate Thesaurus* (Merriam–Webster Inc.1988) provides the following definition:

1. one that has real and independent existence <each *entity* of the series requires separate study>

(Emphasis in original). This thesaurus also lists the following as synonyms:

being, existence, existent, *individual,* something, thing

(Emphasis added).

From this examination of the meaning of the word "entity," it is clear that the word has a broad and all encompassing meaning. It includes all that have being and existence. Thus, it means both natural persons as well as artificial, non-natural persons, such as corporations, partnerships, estates, and trusts. *Black's Law Dictionary* 532 (6th ed.1990). If one can discern anything about the Legislature's intent in amending the statute over time as the defendant has documented, it is that by substituting the term "affiliate" for "person" and by defining the term "affiliate" to mean "any entity," the Legislature intended that the receiver be able to cast its net to recover from the largest possible universe of beings, natural and non-natural, who maintain the required relationship with the insurer.

For these reasons, the court concludes, as a matter of law, that the defendant, as a natural person, can be an "affiliate" of GSL and AGL for purposes of the plaintiff's recovery of distributions pursuant to Section 631.399, Florida Statutes, if and when the plaintiff proves at trial the other conditions of recovery mandated by the statute. The plaintiff is entitled to summary judgment on this point.[2]

### B.

*Do the fiduciary duties owed by an officer and director to a Florida insurance company constitute sufficient "fiduciary capacity" for purposes of Section 523(a)(4) of the Bankruptcy Code?*

■ In the three counts of the GSL complaint and in the two counts of the AGL complaint, the plaintiff contends that the fiduciary duties imposed by Florida law upon the defendant as an officer and director of the respective corporations, when breached by the defendant as alleged, result in an exception to discharge under Section 523(a)(4) of the Bankruptcy Code. That provision, of course, excepts from discharge debts "for fraud and defalcation *while acting in a fiduciary capacity . . . .*" (Emphasis added). The defendant contends, on the other hand, that the general fiduciary duties of officers and directors created by Florida law do not create the "fiduciary capacity" required by federal law for this discharge exception.

In the recent case of *Clark v. Allen (In re Allen),* 206 B.R. 602 (Bankr.M.D.Fla.1997), Judge Proctor had occasion to examine the precise issue presented here. That adversary proceeding involved a defendant who was a member of the board of directors of a West Virginia insurance company that was in receivership. There Judge Proctor held that, "[i]n a proceeding under Section 523(a)(4), the plaintiff must prove that: (1) the defendant was acting in a fiduciary capacity; and (2) while acting in a fiduciary capacity, the defendant committed defalcation," citing *NesSmith Electric Co. v. Kelley (In re Kelley),* 84 B.R. 225, 228 (Bankr. M.D.Fla.1988). *Allen* at 606. As Judge Proctor explained:

This Court has previously held that a fiduciary relationship arises at law and in equity when one person places a special confidence in another, thereby binding that person to make a good faith effort to act in the best interest of the other. *Page v. Racila (In re Racila),* 138 B.R. 303, 306 (Bankr.M.D.Fla.1992) (citations omitted). Federal law determines what constitutes a fiduciary under Section 523. Id. Federal courts have found that "the traditional meaning of the term 'fiduciary'—a relationship involving confidence, trust and good faith—to be far too broad for bankruptcy purposes." *Liberty Nat'l Bank v. Wing (In re Wing),* 96 B.R. 369, 374

---

2. Although the plaintiff has not filed a cross-motion for summary judgment, the court may grant summary judgment for either party on the defendant's motion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982).

(Bankr.M.D.Fla.1989) (*citing Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844)); *Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891). Consequently, the bankruptcy concept has been narrowed, and a plaintiff must prove the existence of an "express or a technical trust." *Id.* This Court has held that "an express or technical trust exists when there is a segregated trust *res*, an identifiable beneficiary, and affirmative trust duties established by contract or by statute." *American Surety & Casualty Co. v. Hutchinson (In re Hutchinson)*, 193 B.R. 61, 65 (Bankr.M.D.Fla.1996). (Footnote omitted)

*Id.*

Judge Proctor then went on to write "that 'an express or technical trust' by their own terms cannot be implied, but must be created by contract or statute." *Id.* at 607. He concluded that a director of the West Virginia life insurance company could not have the requisite fiduciary capacity under Section 523(a)(4) because of the lack of an express or technical trust. Although under West Virginia law a director owed traditionally broad fiduciary responsibilities to the corporation, Judge Proctor held that this general "fiduciary capacity" imposed because of the defendant's service as a director was insufficient.[3] *Id.* On this point, Judge Proctor noted that "fiduciary" under Section 523(a)(4) is a substantially narrower concept than "fiduciary" under state law. *Id.*

Florida law contains the identical kinds of broad fiduciary responsibilities for corporate officers and directors that West Virginia law provides. In these factual circumstances, Florida law likewise lacks, just as West Virginia law lacks, any provision for an express or technical trust for corporate officers and directors. It appears, therefore, that Judge Proctor's *Allen* case would have been decided in precisely the same way had the insurance company involved been a Florida corporation, as is the case here, rather than a West Virginia corporation. Indeed, Judge Proctor's decision in *Allen* is substantially the same as Judge Mark's decision in *Kapila v. Talmo (In re Talmo)*, 175 B.R. 775, 778 (Bankr.S.D.Fla.1994), that involved Florida law. In *Talmo*, the court held that Section 607.0830, Florida Statutes, which codifies the duties owed by officers and directors to a corporation and its creditors, "does not, by its terms, create [an] ... express trust relationship." *Id.* at 778.

The court finds unpersuasive the plaintiff's argument that in *Talmo* Judge Mark overlooked the controlling Florida precedent of *Guaranty Trust & Savings Bank v. United States Trust Co.*, 89 Fla. 324, 330–31, 103 So. 620, 622 (1925). Although there may be language superficially helpful to the plaintiff's theory found in this old *Guaranty Trust* case, the "fund" described in *Guaranty Trust* does not appear to be treated in Florida law as the "res" of an "express" or "technical" trust as those terms are interpreted under federal law.

This court is satisfied, therefore, that both *Allen* and *Talmo* correctly state the law. Accordingly, this court concludes that, as a matter of federal law, the fiduciary duties owed to a Florida corporation by its officer and director under state law are insufficient by themselves to constitute the "fiduciary capacity" required under Section 523(a)(4) of the Bankruptcy Code. The defendant is entitled to summary judgment on this point.

*C.*

*Are the claims of the plaintiff receiver of Guarantee Security Life Insurance Company for breach of fiduciary duty and usurpation of corporate opportunity barred by the applicable four year statute of limitations, Section 95.11(3), Florida Statutes?*

The parties agree that a four year statute of limitations applies to the plaintiff's

---

**3.** Although Judge Proctor did find that the summary judgment record before him in *Allen* created other fact issues requiring trial regarding whether the defendant committed defalcation while acting in a fiduciary capacity, *Allen* at 607, 609, the summary judgment record before me in this case contains no such other fact issues. To create the fiduciary capacity required by Section 523(a)(4), the plaintiff here relies *solely* on the defendant's service as an officer and director of GSL and AGL, allegedly insolvent corporations, and the fiduciary duties imposed by Florida law in such circumstances as a consequence of that service. No fact issues are present, therefore, and this issue can be decided as one of law.

claims in Counts I and II of the GSL complaint for breach of fiduciary duty and usurpation of GSL's corporate opportunities. §§ 95.11(3)(*o*) and (p) and 95.031, Fla.Stat. The parties also agree that the plaintiff was appointed receiver of GSL on August 12, 1991, and that the plaintiff initially filed a civil action in state court alleging these claims on December 20, 1991. The defendant filed this bankruptcy case the day trial of the state court action was to begin. Thus, the parties agree that this adversary proceeding should be deemed filed as of December 20, 1991, for purposes of analyzing the statute of limitations issues.

In the motion for summary judgment, the defendant contends that the defendant's conduct occurring before December 20, 1987, is not actionable because the statute of limitations permits the plaintiff to go back only four years from December 20, 1991. The plaintiff contends, on the other hand, that it can reach back further because either (a) the statute of limitations does not commence to run and is tolled during the time the defendant served as an officer and director of GSL and engaged in the alleged conduct about which the plaintiff complains or (b) discovery of the alleged wrongdoing is deemed to occur only at or after the time the receiver is appointed. This dispute is significant because much about which the plaintiff complains occurred in 1984, 1985, 1986, and early 1987.

The plaintiff offers several theories to support its position, each of which has a different rubric. All of these theories, however, are grounded in the equitable notion that the receiver should not be time barred from pursuing the management of an insurer in liquidation to recover for alleged wrongdoing that management committed while in control of the insurer and that lead to the liquidation—all before the receiver was even appointed. In other words, the plaintiff's position is that the defendant may not use the statute of limitations to insulate himself from liability for acts committed before the receiver was appointed and before the receiver could do anything about those acts.

Under Florida law, the starting point for analyzing a statute of limitations issue is the discovery rule. Under this rule, discovery of the alleged wrongdoing triggers the beginning of the limitations period. As the Florida Supreme Court has explained:

> In reality, such a doctrine [the discovery rule] is merely a recognition of the fundamental principle that *regardless of the underlying nature of a cause of action, the accrual of the same must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights.*

*Creviston v. General Motors Corp.*, 225 So.2d 331, 334 (Fla.1969) (emphasis added). Federal courts applying Florida law understand this clear teaching of the Florida Supreme Court:

> Florida courts ... have broadly adopted the discovery principle, holding in a variety of legal contexts that the statute of limitations begins to run when a person has been put on notice of his right to a cause of action. Generally under Florida law, a party is held to have been put on notice when he discovers, or reasonably should have discovered, facts alerting him of the existence of his cause of action.

*Jones v. Childers,* 18 F.3d 899, 906 (11th Cir.1994) (footnote omitted). Our court of appeals acknowledged this understanding as recently as last year:

> Nevertheless, under Florida's discovery rule, the statute of limitations did not begin to run on the fiduciary duty claims until the FDIC knew or should have known of the alleged breaches.

*Federal Deposit Insurance Corp. v. Stahl,* 89 F.3d 1510, 1522 n. 16 (11th Cir.1996).

In applying this discovery rule, the defendant first argues that the plaintiff as receiver, by definition, stands in the shoes of GSL and that GSL, as a corporation, can act only through its officers and agents. Because the defendant was an officer and director of GSL, he obviously knew of his acts about which the plaintiff now complains. That knowledge, the defendant argues, is imputed to GSL. Thus, GSL knew of the acts in question at the time they occurred. Because the acts were discovered by GSL when they occurred and because the plaintiff now

stands in the shoes of GSL, the defendant urges that the discovery rule mandates the conclusion that the statute of limitations commenced to run when the acts occurred and that those acts which occurred more than four years before the December 20, 1991, filing date are barred.

■ It is true, as the defendant asserts, that Florida law recognizes, for purposes of applying the discovery rule, that the actions and knowledge of officers and directors are indeed imputed to the corporation they serve. *Joel Strickland Enterprises, Inc. v. Atlantic Discount Co.*, 137 So.2d 627, 629 (Fla. 1st DCA 1962). Florida law also recognizes, however, the "adverse interest exception" to this general rule of imputation. *Id.* Under this adverse interest exception, the actions and knowledge of the officers and directors are not imputed to the corporation when those agents were acting adversely to the corporation's interests. *Nerbonne, N.V. v. Lake Bryan International Properties*, 685 So.2d 1029, 1031 (Fla. 5th DCA 1997); *Florida Department of Insurance v. Blackburn*, 633 So.2d 521, 524 (Fla. 2d DCA 1994).[4] In these circumstances, there is evidence that the acts about which the plaintiff complains involve acts for the defendant's benefit and that were contrary to the interests of GSL. This adverse interest exception to the discovery rule, therefore, would appear to preclude a determination that the statute commenced to run with the imputed discovery of the acts by GSL which is now imputed to the plaintiff.

■ This conclusion is also supported by other cases that refer to an "adverse domination theory." Under this theory, a statute of limitations is tolled on an action alleging misconduct by an officer or director so long as a majority of the board is dominated by the alleged wrongdoers. *See, e.g., Federal Deposit Insurance Corp. v. Gonzalez-Gorrondona*, 833 F.Supp. 1545, 1556–57 (S.D.Fla. 1993). Although one court has specifically held that there is no adverse domination rule

in Florida, *Brandt v Bassett (In re Southeast Banking Corp.)*, 855 F.Supp. 353, 357–58 (S.D.Fla.1994), *dismissed in part, aff'd. in part, rev'd in part*, 69 F.3d 1539 (11th Cir. 1995),[5] this conclusion appears questionable.

In *Southeast Banking Corp.*, the court concluded that Florida law does not recognize the adverse domination theory for two reasons. First, the court reasoned that, because Florida's tolling statute, Section 95.051, Florida Statutes, enumerates the specific circumstances that toll a statute of limitations and because the tolling statute does not contain an adverse domination provision, there can be no tolling for adverse domination in Florida. Second, the court found no Florida authorities that adopted this adverse domination theory.

This reasoning is unpersuasive because Florida courts have consistently and specifically applied the discovery rule notwithstanding the absence of discovery provisions in the text of the tolling statute. Indeed, the district court in *Gonzalez–Gorrondona* specifically relied on the Florida Supreme Court's application of the discovery rule in *Creviston* to support its holding. *See Gonzalez–Gorrondona* at 1557. The case of *Stahl*, decided after *Southeast Banking Corp.*, demonstrates that the discovery rule remains viable in Florida. *Stahl* at 1522 n. 16.

In addition, Florida courts have adopted and utilized the adverse interest exception to the discovery rule which for all practical purposes is based upon a tolling theory. *Nerbonne, N.V.* at 1031; *Blackburn* at 524; *Joel Strickland Enterprises, Inc.* at 629. Thus, if Florida courts have failed to adopt specifically the "adverse domination theory" under that precise name, they have nevertheless consistently applied the principles that are the gravamen of that theory to reach the same result.

Contrary to the defendant's argument, *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer v. Flanagan*, 629 So.2d

**4.** This Blackburn case involved the plaintiff as receiver of AGL and the defendant here. It was one of the several state and federal court actions that preceded the defendant's bankruptcy case.

**5.** The court of appeals found the district court's statute of limitations determination, including the adverse domination theory, to be interlocutory. 69 F.3d at 1548–49. The court wrote: "Accordingly, we lack jurisdiction to review it." 69 F.3d at 1549.

113 (Fla.1993), decided by the Florida Supreme Court between the time of *Gonzalez–Gorrondona* and *Southeast Banking Corp.*, does not change this conclusion. Although in *Wagner, Nugent* the court held that the discovery rule was inapplicable, it did so only in a very narrow context. *Id.* at 114–15. The court held that the discovery rule was inapplicable to *defamation claims* because the defamation statute, Section 770.07, Florida Statutes, specifically provides for statute of limitations purposes that a cause of action for defamation accrues upon first publication. *Id.*

■ As an alternative theory, the defendant argues that the plaintiff had actual knowledge of the defendant's alleged wrongdoing at the time or shortly after the alleged wrongdoing occurred. According to the defendant, that actual knowledge on plaintiff's part commenced the running of the statute or precludes the tolling that the plaintiff asserts. The plaintiff responds, however, by pointing out that under Florida law the Department of Insurance *in its capacity as regulator* is different from the plaintiff in *its capacity as liquidating receiver.* Thus, the plaintiff argues, even if the *regulator* had some knowledge of the alleged wrongdoing at or near the time it occurred, that knowledge may not be imputed to the *receiver* for purposes of barring the receiver's claims.

The Florida Department of Insurance's separate capacities as regulator and as liquidating receiver are created in an elaborate statutory scheme. The Department of Insurance, as a *regulator,* is a public agency within the executive branch that regulates insurance companies for the benefit and protection of the public. §§ 20.02, 20.13, 624.316, 624.418, Fla.Stat. On the other hand, Chapter 631, Florida Statutes, provides "the sole and exclusive method of liquidating, rehabilitating, reorganizing, or conserving an insurer." § 631.021(3), Fla.Star. In such a proceeding, the Department of Insurance "shall" be the receiver. § 631.141(1), Fla.Stat. As *receiver,* "the department is vested by operation of law with title to all of the property, contracts, and rights of action ... of the insurer, wherever located...." § 631.141(2), Fla.Stat.

Pursuant to this statutory scheme, therefore, the Department of Insurance operates in these two legal and distinct capacities: as *regulator* in enforcing the Florida Insurance Code and as receiver for insolvent insurers. *Florida Department of Insurance v. Coopers & Lybrand,* 570 So.2d 369, 371 (Fla. 3d DCA 1990). *Accord Corcoran v. Becker,* 140 A.D.2d 62, 532 N.Y.S.2d 371, 374 (N.Y.App. Div.1988). *See also Corcoran v. Frank B. Hall & Co.,* 149 A.D.2d 165, 545 N.Y.S.2d 278, 282 (1989).

In actions brought by the receiver, courts have rejected defenses and counterclaims based upon actions of the *regulator* because of these two legal and distinct capacities. *See, e.g., Foster v. Rockwood Holding Co.,* 158 Pa.Cmwlth. 258, 632 A.2d 335, 337–38 (1993); *State ex rel. Long v. Alexander & Alexander Services, Inc.,* 711 F.Supp. 257, 264 (E.D.N.C.1989); *Corcoran v. National Union Fire Insurance Co.,* 143 A.D.2d 309, 532 N.Y.S.2d 376, 378 (N.Y.App.Div.1988). Indeed, in the state court GSL action filed by the plaintiff as receiver against the defendant before this bankruptcy case, the state court had granted the plaintiff's motion for partial summary judgment based on the defense that the regulator had known GSL's true financial condition at an earlier date.

Based upon the same separate and distinct legal capacities, courts have also held that, for statutes of limitation purposes, the receiver takes its appointment free of any imputation of knowledge of the previous mismanagement:

> [T]he two year period provided by CPLR 203(f) did not begin to run until the liquidators were appointed by the Luxembourg court. Since this occurred on December 18, 1973, and they commenced the instant action on July 17, 1975, the action was brought within two years from the time in which *they themselves* discovered or should have discovered the fraud. During the earlier period in which the underwriter defendants claim the King fraud was easily discoverable, Management was controlled by Vesco, the successor to Cornfeld who lost control sometime in 1970. Vesco was allegedly involved in even more grandiose schemes to bilk the fundholders, and he

certainly could not be expected to bring an action on their behalf when such an action would simply focus attention on his own wrongdoing.

*IIT, an International Investment Trust v. Cornfeld,* 619 F.2d 909, 929–30 (2d Cir.1980) (emphasis in original). *See also Dudley v. Allen,* 1971 WL 302, CCH Fed.Sec.L.Rep. ¶ 93,273 (W.D.Ky.1971); *In re Western World Funding, Inc.,* 52 B.R. 743, 765 (Bankr.D.Nev.1985), *aff'd in part, rev'd in part on other grounds sub nom. Buchanan v. Henderson,* 131 B.R. 859 (D.Nev.1990), *rev'd,* 985 F.2d 1021 (9th Cir.1993).

*Hunt v. American Bank & Trust Co.,* 606 F.Supp. 1348 (N.D.Ala.1985), *aff'd,* 783 F.2d 1011 (11th Cir.1986), is not inconsistent with these authorities. *Hunt* simply holds that, where the receiver waited to file the action longer than the limitation period *after* being appointed as receiver, the receiver's claims were barred. *Id.* at 1359. The receiver there argued that the statute should not begin to run until he discovered the fraud after his appointment. The district court held on the facts of the case, however, that the knowledge of the regulator as documented in the file could be imputed to the receiver so the statute should begin to run as of the receiver's appointment. *Id.* In other words, the district court held that the receiver should have known of the wrongdoing at the time of his appointment because of the facts available to him as contained in the regulator's file. *Id.* When the receiver commenced the action beyond the period of the statute of limitations when measured from the time of the receiver's appointment, the district court found the claims to be time barred. *Id.*

In this case, of course, the receiver filed the action within three months after his appointment. *Hunt* therefore stands as no authority to support the conclusion that the plaintiff's claims are barred.

For these reasons, the court concludes that the defendant is not entitled to summary judgment on its statute of limitations affirmative defenses to the plaintiff's claims. The summary judgment record contains disputed facts that, if determined at trial in favor of the plaintiff, would support the conclusion that, pursuant to the adverse interest exception to Florida's discovery rule and the separate and distinct legal capacities of regulator and receiver, the defendant's knowledge was not imputed to GSL, the regulator's knowledge was not imputed to the receiver, and neither GSL nor the receiver could have discovered the claims until the receiver's appointment on August 12, 1991. Those facts, if established at trial, would also support the conclusion that the statute of limitations was tolled and did not commence to run until the receiver's appointment on August 12, 1991. Accordingly, the court could conclude after trial that the receiver's claims, filed on December 20, 1991, are all within the applicable statute of limitations.

*Conclusion*

The court has now determined all of the issues raised in the defendant's motion for summary judgment that require decision. In the usual course, the court will enter a separate final order on the motion.

DONE and ORDERED.