774 So.2d 747 (2000)
AmSOUTH BANK, Appellant,
v.
FLORIDA DEPARTMENT OF INSURANCE as Receiver of Dealers Insurance Company, Appellee.
No. 1D99-3330.
District Court of Appeal of Florida, First District.
November 21, 2000.
Rehearing Denied December 29, 2000.
*748 Barry Richard of Greenberg, Traurig, P.A., Tallahassee; Larry B. Childs, Randall D. Quarles, Tracy H. Beauchamp of Walston, Wells, Anderson & Bains, LLP, Birmingham, Alabama, of counsel, for Appellant, AmSouth Bank.
Dennis K. Threadgill, Chief Attorney, Michael L. Berry, Senior, Staff Attorney, Florida Department of Insurance, Tallahassee; Helen Ann Hauser of Dittmar & Hauser, P.A., Coconut Grove, for Appellee.
PER CURIAM.
The Florida Department of Insurance ("the Department") was appointed receiver for Dealers Insurance Co. ("DICO") in September, 1994. Initially, the receivership was for conservation of DICO, but as of December, 1994, the purpose of the receivership was liquidation of the company. The Department as receiver sued AmSouth Bank ("AmSouth") for the loss of value of DICO between 1990 and 1994 resulting from alleged mismanagement and diversion of funds by DICO's CEO, M.L. Vaughn.
AmSouth's predecessor in interest, Orange Bank, had made personal loans to *749 Vaughn secured by assets belonging to DICO. Vaughn, who ran the day to day business of DICO, did not have authority to pledge corporate assets, in this instance, CDs valued at over two million dollars, for personal loans. Financial statements in the bank's records showed that Vaughn owned only 35.08% of DICO shares. A corporate resolution form furnished by the bank showed Vaughn had authority to borrow money for the corporation, but it did not authorize him to pledge corporate assets for personal loans. Conflicting evidence was offered to the effect that a bank officer, Lowe, said he would keep the CDs in his desk drawer and no one would ever know of the transaction.
The Department's case was not based directly on the bank's holding assets belonging to DICO. The Department's theory was that AmSouth concealed information which, had the Department known, it would have intervened sooner and been able to rehabilitate the company.
Vaughn and his wife obtained the personal loans from Orange Bank in 1990, entering into hypothecation agreements, and pledging the CDs belonging to DICO as collateral. Orange Bank did not attempt to enforce the hypothecation agreements, and when AmSouth acquired Orange Bank in March, 1994, the loans were still outstanding. In August, 1994, around the time when the Department instituted receivership proceedings, AmSouth returned the CDs to DICO and relinquished any remaining security interest in them.
According to the record, the Department, in its capacity as regulator, never saw and did not know of the hypothecation agreements from 1990 until the release in 1994. The agreements were not reflected in financial statements or in audit confirmation letters returned by the bank. Allegedly, because of this failure to disclose the agreements, the agreements and their effect on DICO were not considered by the Department in calculating whether DICO was sufficiently solvent to remain in business, and therefore the Department did not learn of serious breaches of fiduciary duty against DICO until it was too late to salvage the company.
After suing the Vaughns and others, the Department sued AmSouth for fraud, negligent misrepresentation, breach of fiduciary duty, and civil conspiracy. A jury returned a verdict in favor of the Department as receiver, assessing $2,726,762.00 (after a set-off for reinsurance premiums) in compensatory and $1,111,861.00 in punitive damages against AmSouth.
In this appeal, AmSouth contends the trial court erred by: (1) denying AmSouth the ability to introduce evidence or present argument on the essential elements of reliance and proximate cause; (2) sending the fraud and misrepresentation claims to the jury without requiring the Department to prove actual reliance by the alleged injured party; (3) holding that the statute of limitations did not apply; (4) permitting the Department to use inconsistent valuation methods in its damages model; and (5) holding that the right to set-offs under Florida law did not apply in this case. We find reversible error occurred with regard to issues one, four, and five.
On the first issue, AmSouth argues that, despite a pretrial ruling[1] which would have permitted AmSouth to present evidence of conduct, knowledge, or actions of the Department in its regulatory capacity to the extent such evidence was relevant to AmSouth's defenses or elements of the causes of action asserted against it, the trial court severely limited AmSouth's opportunity to cross-examine witnesses and present evidence on the issues of reliance and proximate cause. AmSouth contends the court prevented it from showing that the Department did not rely on alleged misrepresentations, and that the Department's past conduct indicated it would not *750 have acted sooner against DICO in any event.
The court's rulings during trial were based on its determination that AmSouth should not be able to show regulatory negligence as a defense to the charges against it. While agreeing that some evidence of Department behavior would be relevant under the circumstances, the Department contends that the court properly limited AmSouth's presentation on the theory that regulatory negligence is not a defense in this action. The Department relies on case law that holds that "regulatory conduct cannot stand as a basis for direct claims, affirmative defenses and counterclaims" in a case such as this where the Department is acting in its capacity as receiver. See In re Blackburn, 209 B.R. 4 (Bkr.M.D.Fla.1997). The Department also asserts for the first time on appeal that the trial court properly kept the evidence out as cumulative, irrelevant, and unduly prejudicial.
We recognize that the Department is acting in its role as receiver in this case, as distinguished from its role as regulator, and that regulatory negligence may not be asserted as a defense, See, e.g., In re Blackburn. Nevertheless, we agree with AmSouth that evidence that the Department had earlier knowledge of DICO's tenuous financial condition and its failure to comply with applicable regulations and took no action, or otherwise did not rely on the bank's representations in its treatment of DICO, was probative of essential elements of the case. The Department placed knowledge and reliance at issue by building its case around testimony that had the Department known of the unauthorized pledges in 1990, it almost certainly would have instituted a receivership action to safeguard policyholders' interests at that time, and probably would have sought removal of Vaughn as CEO of DICO. There was evidence in the record that DICO was in tenuous financial condition as early as 1987; was not in compliance with applicable regulations in 1988; that collateral receipts evidencing an earlier unauthorized pledge of a CD were discovered by Department auditors in 1988; and that the Department had initiated and dismissed proceedings against DICO in 1992 and early in 1994 for various statutory violations.
AmSouth did not seek to prove an affirmative defense of regulatory negligence, or to offer the evidence as the basis for a direct claim or counterclaim. AmSouth did not seek to set-off liability against the Department; rather, it sought an opportunity to defend against the charges brought by the Department as receiver. We agree that the proof AmSouth sought to include through cross-examination and presentation of evidence was not cumulative, but was relevant to the issues of reliance and proximate cause, was not unduly prejudicial, and should have been permitted with an appropriate limiting instruction. Our review of the pertinent portions of the record convinces us that the trial court abused its discretion by being unduly restrictive in its rulings on this matter.
We also agree with AmSouth that the trial court erred in permitting the Department to use inconsistent valuation methods in its damages model to compare DICO's net worth in 1990 and 1994. The Department's own witnesses agreed that the valuation methods were different, and the Department attempted, unsuccessfully, to bring in a late witness to cure this "apples and oranges" problem. See, e.g., Baggett v. Woodbury, WL 383796 (N.D.Fla.1987), aff'd. 874 F.2d 819 (11th Cir.1989).
Finally, we agree that AmSouth was entitled to set-offs for amounts the Department recovered through settlement against other defendants for the same claims as those brought against AmSouth. AmSouth also should have been permitted to show the amounts recovered by the Department as the result of judgments obtained against other defendants for the same claims. See, e.g., Acadia Partners, *751 L.P. v. Tompkins, 759 So.2d 732 (Fla. 5th DCA 2000).
Reversed in part, affirmed in part, and remanded for further consistent proceedings.
JOANOS, LAWRENCE and VAN NORTWICK, JJ., CONCUR.
NOTES
[1] Judge Davey entered the pretrial ruling. Judge McGregor conducted the trial.