In re Dominic MICELI, Debtor.

Margaret Ploetner–Christian, Plaintiff,

v.

Dominic Miceli, Defendant.

**Bankruptcy No. 98–5359.**
**Adversary No. 98–226.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Aug. 11, 1999.

Jason Burnett, Crystal Beach, FL, for plaintiff.

Robert Altman, Palatka, FL, for defendant.

Aaron R. Cohen, Jacksonville, FL, trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon a complaint filed by Margaret Ploetner–Christian ("Plaintiff") seeking to except a debt from the discharge of Dominic Miceli ("Defendant") pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). (Adv.Doc. 1.) Upon the evidence presented at the trial on February 2, 1999, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. In April, 1992 Plaintiff, owner of Allied Health Professionals ("Allied"), and Defendant, owner of Dominic Miceli R.P.T.P.A. (the "P.A."), formed Southern Rehab, Inc. ("Southern") to provide physical, occupational, and speech therapy to nursing homes and other rehabilitation facilities. (Tr. 56.) The parties each owned 50% of Southern's stock. (Tr. 14.)

2. Prior to the formation of Southern, Allied had a contract with Paragon, Inc. (the "Paragon contract") to provide physical and occupational therapy at Timberidge Rehabilitation and Nursing Center in Marion County, Florida. (Pl.['s] Ex. 3 at 2.) Upon the formation of Southern, Plaintiff assigned the Paragon contract to Southern. (Id.)

3. The Paragon contract contained a restrictive covenant limiting the degree to which a company controlled by Plaintiff could enter into similar contracts. (Id.) Plaintiff testified that the restrictive covenant prohibited Allied or a corporation controlled by Plaintiff from entering into contracts with other nursing homes, but that it did not encompass entities such as hospitals and schools. (Tr. 33.) Defendant testified that the Paragon contract prohibited Allied or a corporation controlled by Plaintiff from contracting with all facilities. (Tr. 59.)

4. In July, 1993 the parties entered into a contract with Health Care Properties, Inc. for the operation of the Ponce de Leon Care Center in St. Augustine, Florida (the "Ponce contract") and with another company for the operation of Tyrone Medical Inn in Pinellas County, Florida (the "Tyrone contract"). (Pl.['s] Ex. 3 at 3; Ex. 4.) To avoid violating the restrictive covenant in the Paragon contract, the parties agreed that the PA would be the contracting party, but that the business would be handled as if it belonged to Southern. (Pl.['s] Ex. 3 at 3.) Accordingly, all profits and losses from the Paragon contract, the Ponce contract, and the Tyrone contract were to be shared equally. (Id.)

5. The accounting procedures were to reflect whether the P.A. used employees from the Ponce, Tyrone, or Paragon facilities and therefore needed to reimburse Southern for such use. (Id.) The records were also to show whether the Ponce, Tyrone, or Paragon facilities used employees of the P.A. and therefore needed to reimburse it. (Id.)

6. The parties entered into an agreement dated February 2, 1993 signed by Plaintiff as president of Southern and Defendant as president of the P.A. which stated that the P.A. would provide monthly management services to Southern. (Def.['s] Ex. 3.) The written agreement contained no further explanation as to the nature or extent of the services. Defendant testified that the agreement was for the provision of personnel from the P.A. to Southern. (Tr. 94.)

7. On or about August 30, 1993 Southern began negotiating with Munroe Regional Medical Center ("Munroe") for the provision of physical and occupational therapy. (Pl.['s] Ex. 7.)

8. On September 14, 1993 Plaintiff and Defendant submitted a proposal on behalf of Southern to Dyer Michell, the president and CEO of Big Sun Health Systems, Inc., the parent company of Munroe, to provide services to Munroe. (Id.)

9. On November 4, 1993 the P.A. entered into an agreement to provide physical and occupational services to Munroe. (Id.) Defendant represented to Plaintiff that she would receive half the profits from the Munroe contract. (Pl.['s] Ex. 3 at 4.)

10. Plaintiff did not receive any profits from the Munroe contract. (Tr. 22, 62.)

11. Plaintiff did not receive an equal share of the profits from the Paragon contract, the Tyrone and Ponce contracts, and the X contracts, a group of contracts held by the P.A. (Pl.['s] Ex. 4.)

12. In 1994 Plaintiff filed a complaint in the Circuit Court, Fifth Judicial Circuit in and for Marion County, Florida (the "state court") seeking damages, dissolution of the corporation, accounting, and injunctive relief against Defendant. (Pl.['s] Ex. 2.)[1]

13. Defendant testified he did not share the profits from the Munroe contract because he was awaiting the outcome of the pending litigation. (Tr. 63.) Defendant also testified he put the Munroe contract in the name of the P.A. because of the restrictive covenant in the Paragon contract. (Tr. 59.)

14. On August 19, 1997 the parties entered into a settlement agreement in which they agreed to arbitrate their disputes. (Pl.['s] Ex. 3.) The agreement provided that Leslie Turner, a C.P.A., would determine the profits generated by the Ponce and Tyrone contracts, the Paragon contract, the Munroe contract, and the X contracts.[2] (Id.) The agreement also provided that the state court would enter a judgment in the amount of the award. (Id.) Finally, the agreement provided that the lawsuit would be dismissed with prejudice within five days of the entry of the judgment. (Id.)

15. On November 18, 1997 the arbitrator awarded $93,889.00 to Plaintiff for her share of the profits from the disputed contracts. (Pl.['s] Ex. 4.) In addition, the arbitrator awarded prejudgment interest from September 30, 1994 to November 18, 1997 of $24,488.00, attorney's fees of $20,000.00, accountant's fees of $8,000.00, and arbitrator's fees of $15,000.00 for a total of $161,377.00. (Id.)

16. The arbitrator made no findings of fraud but testified there was a lack of substantiation for expenses the P.A. charged to Southern. (Tr. 36, 40.) The arbitrator also testified he did not take into account any reasons why either party would be entitled to more than 50% of the

---

1. Additionally the complaint listed as defendants the P.A., Inverness Physical Therapy and Rehabilitation Associates, Inc., and Access Rehab, Inc. all of which are owned by Defendant. The Court is only concerned with the complaint as it applied to Defendant.

2. The Court notes that neither Plaintiff's complaint nor her proposed Findings of Fact and Conclusions of Law refers to the X contracts. The Arbitrator's award was based in part upon a division of the profits from the X contracts. Plaintiff seeks to except from Defendant's discharge the total amount of the arbitrator's award. Accordingly, the Court addresses the X contracts in its decision.

profits from the disputed contracts. (Tr. 51.)

17. Subsequent to the arbitrator's award, Defendant filed a motion accusing the arbitrator of constructive fraud. The motion was dismissed by the state court. (Tr. 70–71.)

18. On June 22, 1998 the state court entered a Confirmation of Arbitration Award and Final Summary Judgment awarding Plaintiff prejudgment interest from November 18, 1997 to June 22, 1998 of $7,463.07 and attorney's fees and costs of $39,164.75 to defend the arbitrator's award, bringing the total amount of the judgment against Plaintiff to $208,044.82. (Pl['s] Ex. 7.)

19. On July 7, 1998 Defendant filed a Chapter 7 bankruptcy petition. (Doc. 1.)

20. Plaintiff commenced this proceeding seeking to except from discharge the debt Defendant owes her. (Adv.Doc. 1.)

## CONCLUSIONS OF LAW

### 11 U.S.C. § 523(a)(2)(A)

Initially the Court must determine whether the debt Defendant owes to Plaintiff is excepted from Defendant's discharge pursuant to § 523(a)(2)(A).

Section 523(a)(2)(A) provides in pertinent part that:

> (a) A discharge under section 727 ... does not discharge an individual debtor from any debt—...
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— .
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A) (1999).

■ The Bankruptcy Code favors discharge of an honest debtor's debts. *Citizens National Bank v. Hunter, (In re Hunter)*, 229 B.R. 851, 856 (Bankr. M.D.Fla.1999) (citations omitted). "Provisions denying discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor." *Id.*

■ To prevail under 11 U.S.C. § 523(a)(2)(A), Plaintiff must establish that: (1) Defendant made a false representation with the purpose and intention of deceiving Plaintiff; (2) Plaintiff relied on Defendant's representation; (3) Plaintiff's reliance on the false statement was justifiably founded; and (4) Plaintiff was damaged as a result of the false statement. *Id.* at 858–859. Plaintiff bears the burden of proving the above elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Because direct evidence of intent is rarely available, the Court may infer intent to deceive from the totality of circumstances. *Mendez v. Cram, (In re Cram)*, 178 B.R. 537, 540 (Bankr.M.D.Fla.1995).

■ Plaintiff contends Defendant failed to equally share the proceeds of the Ponce and Tyrone contracts, the Paragon contract, the X contracts, and the Munroe contract, failed to explain claimed expenses to the arbitrator and, subsequent to the initiation of litigation, created documentation to substantiate his expenses. Plaintiff also alleges Defendant paid the P.A. approximately $60,000.00 from Southern for unauthorized management services performed by the P.A. Plaintiff contends the preceding factors are sufficient to establish Defendant's fraudulent intent under a totality of the circumstances analysis. Plaintiff further argues that she reasonably relied on Defendant's representations that he would share the profits from the contracts and, as evidenced by the arbitrator's award, was damaged.

In cases involving unfulfilled promises, this Court has held that proof of fraud requires the plaintiff to prove at the time defendant made the promises that defendant either knew he could not fulfill the promises or had no intention of fulfilling

them. *Bropson v. Thomas, (In re Thomas),* 217 B.R. 650, 653 (Bankr.M.D.Fla. 1998). Essentially, Plaintiff must prove Defendant intended to keep all of the profits from the disputed contracts when they were entered into. It is undisputed that Plaintiff did not receive any profits from the Munroe contract. Defendant testified he failed to share any of the profits from the Munroe contract with Plaintiff because he was awaiting the outcome of litigation. With respect to the Ponce and Tyrone contracts, the Paragon contract, and the X contracts, Plaintiff's only evidence is the arbitrator's award of a portion of the profits to Plaintiff. The arbitrator made no findings of fraud.[3] As Defendant points out, the allegations in the state court complaint were never substantiated in state court. Plaintiff's allegation that Defendant paid himself $60,000.00 for unauthorized management services is without merit in light of the P.A.'s written agreement to provide management services to Southern. Plaintiff admitted she signed the agreement.[4] Additionally, the arbitrator testified that he did not take into account reasons, including payment for the provision of management services, for which either party would be entitled to more than 50% of the profits from the disputed contracts. Accordingly, the Court finds that Plaintiff has not proven by a preponderance of the evidence that Defendant made a false representation with the purpose and intention of deceiving Plaintiff as to the proceeds of the Paragon contract, the Ponce and Tyrone contracts, the X contracts, and the Munroe contract. Having held that Plaintiff failed to prove the first element of § 523(a)(2)(A), the Court need not address the remaining elements of that section. Accordingly, the debt Plaintiff owes to Defendant will not be excepted from Defendant's discharge unless it meets the requirements of § 523(a)(4).

### 11 U.S.C. § 523(a)(4)

Alternatively, Plaintiff argues that the debt Defendant owes her is excepted from Defendant's discharge pursuant to § 523(a)(4) which provides in relevant part that: "A discharge under Section 727 ... of this title does not discharge an individual from any debt—(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny;" 11 U.S.C. § 523(a)(4) (1999).

### FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY

■ The fiduciary relationship necessary for an exception to discharge requires the existence of an express or technical trust. *American Surety & Casualty Co. v. Hutchinson, (In re Hutchinson),* 193 B.R. 61, 65 (Bankr.M.D.Fla.1996). The existence of a fiduciary relationship is determined by federal bankruptcy law rather than state law. *Cladakis v. Triggiano, (In re Triggiano),* 132 B.R. 486, 490 (Bankr.M.D.Fla.1991). State law is important, however, in determining whether a trust exists. *Kapila v. Talmo, (In re Talmo),* 175 B.R. 775, 777 (Bankr.S.D.Fla. 1994). An express or technical trust exists when there is a segregated trust res, an

3. Question "Could you reach an opinion that it's your belief that fraud was committed by Mr. Miceli against Mrs. Christian?"

Answer "I was not hired to render an opinion related to fraud in their dispute."
Question "Did you find any of his information, did you ever find it misleading of dishonest? That's the question."
Answer "More incomplete. I—I really was not focusing on whether or not the items were misleading or dishonest. The information was either complete or it wasn't. And I rendered my opinion based on that." (Tr. 36–40.)

4. Question "So he was due some kind of compensation whatever that was?"
Answer "I feel as 50% owner of the company both of us should be-equally share in the compensation."
Question "But that's not what the contract says is it?"
Answer "No, that's correct."
Question "And you signed it?"
Answer "Yes I did." (Tr. 107.)

identifiable trust beneficiary, and trust duties established by contract or statute. *Hutchinson,* 193 B.R. at 65. Fiduciary capacity should be narrowly defined. *Quaif v. Johnson,* 4 F.3d 950, 952 (11th Cir.1993). Florida bankruptcy courts that have addressed the issue of whether the general fiduciary duties placed upon corporate officers are sufficiently narrow to meet the requirements of § 523(a)(4) have held that they are not.

In *In re Talmo* the Court stated:

While Florida statutes and case law may impose on officers and directors general obligations of good faith and fair dealing that can be described as "fiduciary duties", this does not mean that an officer or director acts in an express or technical "fiduciary capacity"—as a trustee of corporate assets. Absent a Florida statute creating a trust relationship or Florida case law finding corporate officers to be trustees over corporate assets, there is no basis here for a claim of nondischargeability under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity.

*Talmo,* 175 B.R. at 778.

█ Similarly, the Court in *In re Blackburn* held that, as a matter of federal law, the fiduciary duties owed to a Florida corporation by its officer and director under state law are insufficient by themselves to constitute the "fiduciary capacity" required under § 523(a)(4) of the Bankruptcy Code. *Blackburn,* 209 B.R. 4, 9 (Bankr.M.D.Fla.1997). "Florida law lacks . . . any provision for an express or technical trust for corporate officers and directors." *Id.* The Court adopts the holding in *Blackburn.* Defendant's position as an officer and director of Southern, standing alone, is insufficient to meet the fiduciary capacity standard required by § 523(a)(4). Having determined that Defendant was not acting in a fiduciary capacity, the Court need not address defalcation. The Court has already determined that Defendant did not commit fraud. Accordingly, Defendant's debt to Plaintiff is not excepted from Defendant's discharge for fraud or defalcation while acting in a fiduciary capacity.

### EMBEZZLEMENT

█ Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. *J.C. Faw v. Wiles, (In re Wiles)* 166 B.R. 975, 980 (Bankr.M.D.Fla.1994) (quoting *In re Kelley,* 84 B.R. 225, 231 (Bankr.M.D.Fla.1988)). A plaintiff is not required to prove the existence of a fiduciary relationship, but must show that the defendant acted with fraudulent intent. *Id.* Plaintiff contends that Defendant appropriated the Munroe contract in the P.A. company for his sole benefit and that he failed to share the proceeds equally with Plaintiff despite his obligation to do so. Plaintiff argues that these facts coupled with Defendant's failure to explain claimed expenses and his alleged documentation after the fact are sufficient to establish Defendant's fraudulent intent to embezzle funds from Plaintiff. The Court's finding that Plaintiff failed to prove fraudulent intent with respect to the proceeds of the Paragon contract, the Ponce and Tyrone contracts, the X contracts and the Munroe contract precludes a finding of embezzlement. Accordingly, the Court need only determine whether the placement of the Munroe contract in the name of the P.A. constitutes embezzlement.

█ Plaintiff testified she was surprised Defendant put the Munroe contract in the name of the P.A. and was not aware of the change until the day the contract was signed. However the settlement agreement indicates it was agreed the Munroe contract would be placed in the name of the P.A. (Pl.['s] Ex. 3 at 4.) Additionally, Defendant testified the reason for the placement of the contract in the name of the P.A. was the parties' fear of being sued by Paragon for violating the restrictive covenant. (Tr. 59.) The Court finds

Defendant's explanation and the settlement agreement persuasive. Accordingly, the Court holds that the placement of the Munroe contract in the name of the P.A. does not constitute embezzlement by Defendant.

### LARCENY

Larceny is the fraudulent taking and carrying away the property of another with intent to convert such property to his use without the consent of another. *Wiles*, 166 B.R. at 980. The Court's finding that Plaintiff failed to prove fraudulent intent with respect to the proceeds of the Paragon contract, the Ponce and Tyrone contracts, the X contracts, and the Munroe contract precludes a finding of larceny.

### CONCLUSION

The Court finds that Plaintiff has failed to meet her burden in order to except the debt owed to her by Defendant from discharge pursuant to § 523(a)(2)(A) or § 523(a)(4). Accordingly, Defendant is entitled to a discharge under Chapter 7 of the Bankruptcy Code. The Court will enter a judgment consistent with these Findings of Fact and Conclusions of Law.