**In re Audere C. INMAN, Debtor.**

**Cardservice International, Inc., Plaintiff,**

**v.**

**Audere C. Inman, Defendant.**

**Bankruptcy No. 00–2093–BKC–3F7. Adversary No. 00–290.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 13, 2000.

Kenneth L. Mann, Orlando, FL, Litigation Attorney for Defendant.

Elliot Miller, Miami Beach, FL, for Plaintiff.

Peter C. Blinn, Ocala, FL, Bankruptcy Attorney for Defendant.

Gordon P. Jones, Jacksonville, FL, Chapter 7 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court on the Motion for Summary Judgment and Alternative Motion to Dismiss filed by Audere C. Inman ("Defendant") on November 13, 2000. (Doc. 9.) On November 30, 2000, Cardservice International, Inc. ("Plaintiff") filed a Motion for Telephone Hearing in response. (Doc. 12.) The Motion for Telephone Hearing did not in any way contravene the allegations made or evidence presented by Defendant in the Motion for Summary Judgment. Pursuant to the Court's Order as to Preparation, Service, and Return of Process and Establishing Motion Hearing Procedures, the Court has the discretion to deem the Motion for Summary Judgment unopposed. However, the Court elects to consider the Motion for Summary Judgment on its merits.

### FINDINGS OF FACT

On March 20, 2000 Defendant filed a voluntary Chapter 7 petition.

On May 31, 2000 Plaintiff, a credit card transaction processor, filed a Proof of Claim for $23,654.79 plus interest and costs against Defendant's estate. (Doc. 2.) Plaintiff based its claim on money allegedly owed Plaintiff due to a breach of a credit card transaction processor—merchant agreement. Plaintiff's claim has not been reduced to judgment in state court.

The Court finds it necessary here to expound on the nature of Plaintiff's claim against Defendant. According to the parties, Plaintiff, a transaction processor, entrusted JR–MA, a travel manual manufacturer/merchant at least partially controlled by Defendant, with a credit card terminal through which to run customers' credit card purchases.

When a credit card purchase is run through these terminals, payment is automatically transferred from an open account held by a processor into a merchant's account. The processor then requests compensation for that draw from a card-issuing bank, which then bills a cardholder for the purchase. If the cardholder refuses to pay upon receiving his monthly bill weeks later, then the processor tags the payment sent to the merchant as a "chargeback." Credit card companies such as Visa and Mastercard mandate that, if a cardholder disputes a charge, then the entire transaction must be undone and any chargeback money returned to the processor pending resolution of the dispute. The contract between a processor and a merchant generally requires that a merchant maintain enough

cash on hand to remit chargebacks instantly in such situations.

According to the agreement between Plaintiff and JR–MA, if a cardholder challenged a credit card purchase, then Defendant became obligated to immediately remit cash to cover the chargeback to Plaintiff. The agreement did not obligate JR–MA to segregate chargeback funds or tag them in any way.

In the agreement Defendant also personally guaranteed any contract damages incurred by JR–MA, including damages for unremitted chargebacks.

In the winter of 1998, Defendant began to absorb significant chargebacks from charges challenged by one of its customers, Travstar.

JR–MA did not have sufficient cash on hand to compensate Plaintiff for the chargebacks, which, according to Plaintiff's Proof of Claim, piled up to around $23,000.00. The money accumulated through chargebacks somehow drained from JR–MA before Plaintiff could collect.

Plaintiff, realizing JR–MA was judgment-proof, elected to pursue Defendant. Defendant subsequently filed Chapter 7 on March 20, 2000.

On September 28, 2000 Plaintiff filed a Complaint to Determine Dischargeability of Debt, Objecting to Discharge, and Objecting to Exemptions and to Fraudulent Transfers. (Doc. 1.)

Plaintiff contends that Defendant should be denied discharge for concealing assets and transactions and for failing to explain loss of assets pursuant to 11 U.S.C. § 727(a)(3) and 11 U.S.C. § 727(a)(5), respectively. Plaintiff further alleges that any sums owed to it by Defendant should be excepted from discharge as fraudulently incurred and stemming from defalcation in a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C.

§ 523(a)(4), respectively. Finally, Plaintiff objects to Defendant's claim of exemptions in certain household property.

Specifically, Plaintiff alleges that Defendant set up JR–MA in order to create a corporate veil behind which she and her co-conspirators at Travstar could hustle chargebacks with impunity.

Defendant responds in the Motion for Summary Judgment that Plaintiff's complaint should be dismissed for failure to follow the Federal Rules of Bankruptcy Procedure under Rule 41(b), FED. R. CIV. P., and that, alternatively, summary judgment should be entered in her favor under Rule 56, FED. R. CIV. P. Defendant also contends that her husband, John Boll, owns the property claimed as exempt.

Defendant contends that, as guarantor of JR–MA's accumulated chargeback debt, she suffered rather than profited from any fraud perpetrated by Travstar or whoever drained JR–MA of chargeback funds before the money could be returned to Plaintiff. Defendant portrays herself as a patsy, taking the fall for the criminals running Travstar and, apparently, JR–MA.

The instant Proceeding hinges on whether Defendant pursued payment from Travstar, the chargeback customer, as Defendant asserts, or whether Defendant colluded with Travstar by creating chargebacks and helping siphon the money out of JR–MA and therefore out of Plaintiff's reach, as Plaintiff contends. It is unclear how closely related the management and ownership of JR–MA and Travstar were, and what role, if any, Defendant had in Travstar.

## CONCLUSIONS OF LAW

### I. Dismissal and summary judgment standards

Dismissal under Rule 41(b) and, concurrently, Bankruptcy Rule 7041(b) is

appropriate "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court." FED. R. CIV. P. 41(b) (2000). Rule 41(b) provides a court with the power to dismiss suits in order to enforce compliance with a court's orders and the rules of procedure. *See Sibson v. Midland Mortgage Co. (In re Sibson),* 235 B.R. 672, 675 (Bankr.M.D.Fla.1999). Failure of a party to follow the rules of procedure triggers a court's discretion to dismiss that party's lawsuit. *See id.*

Summary judgment under Rule 56 is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2000). A moving party bears the initial burden of showing a court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 607 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to a court that there is an absence of evidence to support a nonmoving party's case. *See Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. In determining whether a moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, a court must draw inferences from the evidence in the light most favorable to a non-movant and resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989). If a moving party satisfies this burden, then a nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushi-*

*ta Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *See id.*

## II. Application to the instant case

### A. Motion to Dismiss

The Court will first dispose of Defendant's Motion to Dismiss under Rule 41(b). The Court will briefly outline Plaintiff's alleged rules violations. The Court will then explain its decision not to dismiss under Rule 41(b).

Defendant first argues that Plaintiff's Complaint should be dismissed because Plaintiff violated Federal Rule of Bankruptcy Procedure 7004(e), which requires that service of a summons and complaint be effected by mail within ten days after the date summons is issued. FED. R. BANKR. P. 7004(e) (2000). Defendant alleges that summons was not served upon her until twenty days after issued.

Further, Defendant argues that Plaintiff's Complaint should be dismissed because Plaintiff violated Federal Rule of Bankruptcy Procedure 7004(b)(9), which requires that a plaintiff must serve a defendant and counsel if a plaintiff is aware that a defendant is represented by counsel. FED. R. BANKR. P. 7004(b)(9) (2000). Defendant alleges that Plaintiff knew she was represented and by whom and yet did not serve her attorney.

Defendant also argues that Plaintiff's complaint should be dismissed because Plaintiff violated Federal Rule of Bankruptcy Procedure 7008, which, by adopting Federal Rule of Civil Procedure 8, requires that a plaintiff filing an adversary proceeding in a bankruptcy court file a "short and plaint statement of the claim

showing that the pleader is entitled to relief." Fed.R.Civ.P.(a) 8 (2000). Defendant alleges that Plaintiff's complaint is vague, rambling, misleading and uses incorrect terminology and statutory provisions to convey Plaintiff's contentions.

Finally, Defendant argues that Plaintiff's Complaint should be dismissed because Plaintiff violated Federal Rule of Bankruptcy Procedure 7009 which, by adopting Federal Rule of Civil Procedure 9(b), requires that a plaintiff filing an adversary complaint in a bankruptcy court allege with particularity circumstances constituting fraud. FED. R. CIV. P. 9(b) (2000).

 The Court elects not to exercise its discretion and dismiss Plaintiff's complaint under Rule 41(b). The Court finds that Plaintiff did, in fact, violate the rules allegedly trespassed against, as Plaintiff did not bother to respond to the allegations of violations in Defendant's Motion to Dismiss. However, dismissal under rule 41(b) should be saved for only the most egregious offenders. Additionally, the Court finds it unnecessary to dismiss Plaintiff's Complaint on procedural grounds where the Court finds that Defendant is entitled to summary judgment on the merits.

### B. Motion for Summary Judgment

The Court finds that Defendant is entitled to summary judgment on the merits of Plaintiff's Complaint. First, the Court will briefly outline Plaintiff's allegations.[1] The Court will then proceed to address each argument in light of the summary judgment standard as outlined above.

### 1. Denial of discharge under § 727(a)(3)

 Plaintiff's first contention is that Defendant should be denied a discharge pursuant to § 727(a)(3).[2] Section 727(a)(3) provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case ...

11 U.S.C. § 727(a)(3) (2000). Plaintiff alleges that Defendant unjustifiably failed to keep and maintain material financial records and the material financial records of her "shell corporation," JR–MA. Specifically, Plaintiff alleges that Defendant did not provide unfiled income tax returns for 1997, 1998 and 1999.

The Court finds that no genuine issue of material fact exists as to whether or not Defendant concealed, destroyed, mutilated, falsified, or failed to keep or preserve material documents and that Defendant is therefore entitled to summary judgment on this count. Defendant testified in the affidavit attached to her Motion for Summary Judgment that she did not file tax returns for 1997 and 1998 because she did not have any taxable income for those two years, and that she did not file timely in 1999 due to her employer's difficulty with paperwork. Defendant additionally testified that she failed to produce a small number of documents at the 2004 examina-

---

1. The Complaint sets forth the § 523(a) arguments first; however, the Court finds it more logical to address the § 727(a) contentions first.

2. The Complaint does not refer to § 727(a)(3) specifically but instead includes one paragraph accusing Defendant of "concealment."

tion due to evacuation from the path of Hurricane Gordon two days before the examination.

In other words, Defendant provided evidence that any records she failed to produce were not material and that any failure to produce any material records was justified. Plaintiff did not refute this evidence with any evidence of its own.

Therefore, Plaintiff failed to satisfy its burden to produce more than some "metaphysical" doubt as to the facts, and Defendant is entitled to summary judgment on this count.

**2. Denial of discharge under § 727(a)(5)**

■ Plaintiff next contends that Defendant should be denied a discharge pursuant to § 727(a)(5).[3] Section 727(a)(5) provides, in relevant part:

(a) the court shall grant the debtor a discharge, unless—

(5) the debtor has failed to explain satisfactorily, before a determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . .

11 U.S.C. § 727(a)(5) (2000). Plaintiff alleges that Defendant "violated section 727(a)(6) [*sic*] by failing to explain satisfactorily her loss of assets or deficiency of assets to meet the debtor's liabilities in that it is reasonably clear, that she and her firm acquired very substantial funds from the purposeful fraud perpetrated . . ." (Doc.1.)

The Court finds that there is no genuine issue of material fact as to whether or not Defendant failed to explain loss of assets

or deficiency of assets. Plaintiff alleges that Defendant accumulated wealth by defrauding Plaintiff and has not explained what happened to such wealth. However, Defendant's undisputed testimony indicates that she did not accumulate hidden riches from any chargeback scheme undertaken by Travstar. Defendant became insolvent because of her personal guarantee of the unpaid chargebacks. Defendant also testified that she never received a legitimate or illegitimate dime from JR–MA. Defendant directly controverted Plaintiff's broad allegations of conspiracy and secrecy. Plaintiff offered nothing in response. Plaintiff never brought anything more than speculation to show that Defendant knew what was going on between Travstar and JR–MA and that Defendant profited from the scheme.

Therefore, Plaintiff failed to satisfy its burden to produce more than bare allegations of the existence of a triable fact, and Defendant is entitled to summary judgment on this count.

**3. Exception from discharge under § 523(a)(2)(A)**

■ Plaintiff alleges that any debt owed to it by Defendant should be excepted from discharge pursuant to § 523(a)(2)(A).[4] Section 523(a)(2)(A) provides, in relevant part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

---

**3.** Plaintiff's complaint mistakenly places this count under "concealment" and mistakenly cites § 727(a)(6) as the controlling provision.

**4.** Plaintiff styled this count as exception from discharge under " § 523(a)(2)." Because

Plaintiff failed to make any of the more specific allegations required to prove § 523(a)(2)(B) or (a)(2)(C) violations, the Court assumes that Plaintiff meant to imply a violation of § 523(a)(2)(A) only.

(A) false pretenses, a false representation, or actual fraud . . .

11 U.S.C. § 523(a)(2)(A) (2000). Plaintiff alleges that Defendant, with fraudulent intent, set up a shell corporation, JR–MA, in order to procure credit from Plaintiff, in the form of credit card chargeback "credit," in order to exploit that credit to enrich herself.

The Court finds that there is no genuine issue of material fact as to whether or not Defendant fraudulently induced Plaintiff to extend credit. Defendant testified in her affidavit that JR–MA is not a shell corporation and that JR–MA had real sales and real business. Defendant flatly denied involvement in any fraud. Defendant also testified and presented evidence showing that she informed Plaintiff of JR–MA's relationship with Travstar from the beginning, and kept Plaintiff well-informed of her efforts to collect the chargeback money from Travstar.

Plaintiff offered nothing to contradict this testimony. Plaintiff was obligated to bring evidence tending to show or creating an inference that Defendant set up JR–MA as a front for creating chargebacks and for siphoning them away to Travstar before Plaintiff could collect. Plaintiff produced nothing connecting Defendant to Travstar and produced nothing leading to an inference that Defendant was involved in any scheme.

Therefore, Plaintiff did not meet its burden of producing more than naked accusations of some issue of material fact, and Defendant is entitled to summary judgment on this count.

### 4. Exception from discharge under § 523(a)(4)

Plaintiff asserts that any debt owed to it by Defendant should be excepted from discharge pursuant to § 523(a)(4). Section 523(a)(4) provides, in relevant part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .

11 U.S.C. § 523(a)(4) (2000). In order for a debtor/defendant to qualify as a fiduciary under § 523(a)(4), a "technical trust"—that is, a trust explicitly created under color of state law—must exist. *See Ploetner–Christian v. Miceli (In re Miceli)*, 237 B.R. 510, 515 (Bankr.M.D.Fla.1999). Plaintiff alleges that Defendant was a fiduciary on account of the credit card processor—merchant relationship, which, Plaintiff argues, imposes a trust on funds held by the merchant in the event of a chargeback.

The Court finds that Plaintiff's § 523(a)(4) count fails as a matter of law. The relationship between a credit card processor and merchant does not create a "technical trust." Rather, it is a sort of implied trust similar to the trust relationship between the directors of a corporation and the corporation's creditors. The fact that Defendant was not contractually bound to segregate the chargeback funds indicates that there existed no technical trust, but instead a contractual right of repayment. Defendant's inability to repay Plaintiff for the chargebacks constitutes a breach of contract, not a breach of trust. Such a relationship does not give rise to § 523(a)(4) liability. Therefore, the relationship between Plaintiff and Defendant could not give rise to a § 523(a)(4) fiduciary fraud exception from discharge.

The Court further finds that no genuine issue of material fact exists on this count. Defendant testified that she had nothing to do with the fraud perpetrated and was in fact herself a victim of any fraudulent scheme. Plaintiff failed to bring forward

any evidence tending to show that Defendant committed or even knew of any fraud.

Therefore, Plaintiff failed to create more than "metaphysical" doubt as to the existence of a triable issue, and Defendant is entitled to summary judgment on this count.

### III. Objection to exemptions

Neither party presented any evidence on Plaintiff's Objection to Defendant's exemptions in household property allegedly owned by her husband. Such an objection should have been brought in the main case, not in this Proceeding. Additionally, the deadline for filing objections to exemptions expired on June 11, 2000.

The Court therefore overrules Plaintiff's Objection to Exemptions with prejudice.

### CONCLUSION

First, the Court denies Defendant's Motion to Dismiss Plaintiff's Complaint on Rule 41(b) grounds. Second, the Court grants Defendant's Motion for Summary Judgment pursuant to Rule 56. Finally, the Court overrules with prejudice Plaintiff's Objection to Exemptions.

The Court will enter a separate Order granting Defendant's Motion for Summary Judgment and a separate Judgment in favor of Defendant.